UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _SEP 1 7 2012_

------------------------------------------------------------X

CYCLES US LLC, ET AL,

              Plaintiffs,

        -v-

FIRST FUNDS LLC, ET AL,

              Defendants.

------------------------------------------------------------ X

11 Civ. 04553 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

## I. BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from Plaintiffs' Complaint and, as such, are accepted as true for present purposes. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). According to Plaintiffs, Defendants are engaged in providing a form of short-term financing known as a "merchant cash advance," in which a finance company "lends a borrower . . . a lump sum of money secured by the borrower's future credit card sales." (Compl. ¶ 5). The borrower, here the Plaintiffs, then directs its credit card processing company to pay the finance company a percentage of the borrower's credit card receipts until the money is repaid in full. (Compl. ¶ 5).

Plaintiffs entered into roughly ten such transactions with Defendants between August 2007 and August 2010, in amounts ranging from $6,000 to $20,000 and with effective interest rates, according to Plaintiffs, ranging from approximately 30% to 100%. (Compl. ¶ 6). Plaintiffs have filed a proposed class action asserting four causes of action arising out of these transactions: usury, money had and received, unfair competition under California law, and for declaratory relief that certain provisions are unenforceable as unconscionable and contrary to California public policy. (Compl. ¶¶ 15-35).

The action was removed to this Court on April 14, 2011, and on October 14, 2011, the Court ordered a limited discovery schedule to address choice-of-law issues. (D.E. 38).   On February 16, 2012, the case was transferred to the undersigned. (D.E. 40).   The motion to dismiss was filed on May 7, 2012; an opposition was filed on May 25, 2012; and a reply was filed on June 8, 2012.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   In considering a motion to dismiss, the Court must accept as true all facts alleged in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Kassner*, 496 F.3d at 237.   In addition to allegations of the complaint itself, the Court may consider documents attached to the complaint as exhibits and documents incorporated by reference in the complaint. *Halebian v. Berv*, 644 F.3d 122, 131  n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008).

## III.  CHOICE OF LAW

The preliminary question that the Court confronts is whether Plaintiffs claims are governed by New York or California law.   The parties agree that this case involves a true conflict of laws between California and New York, particularly as to Plaintiffs' usury claim—on which, as explained below, many of their other claims depend. (Mot. at 2; Opp. at 4).   The parties likewise agree that in evaluating this question, this Court applies New York choice-of-law rules. (Mot. at 11-12; Opp. at 3-4); *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (explaining that in diversity cases federal courts look to the choice-of-law rules of the forum state); *see also*

2

*Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010).

Defendants argue that this Court must apply New York substantive law to the claims in this action because the parties selected this law in the underlying agreements. In particular, they point the Court to a choice-of-law and forum selection provision in the agreements that reads:

> ***Governing Law and Jurisdiction.*** This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Seller consents to the jurisdiction of the federal and state courts located in the State and County of New York and agrees that such courts shall be the exclusive forum for all actions, proceedings or litigation arising out of or relating to this Agreement or subject matter thereof, notwithstanding that other courts may have jurisdiction over the parties and the subject matter thereof.

(D.E. 1). They further direct the Court to the guaranty section of the agreements, which also has a New York choice-of-law and forum selection clause providing that:

> This guarantee shall be governed and construed according to the laws of the State of New York. ALL ACTIONS, PROCEEDINGS OR LITIGATION RELATING TO OR ARISING FROM THIS GUARANTEE OR UNDERLYING AGREEMENT SHALL BE INSTITUTED AND PROSECUTED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS LOCATED IN THE STATE AND COUNTY OF NEW YORK NOTWITHSTANDING THAT OTHER COURTS MAY HAVE JURISDICTION OVER THE PARTIES AND THE SUBJECT MATTER, AND GUARANTOR FREELY CONSENTS TO THE JURISDICTION OF THE FEDERAL OR STATE COURTS LOCATED IN THE STATE AND COUNTY OF NEW YORK.

(D.E. 1). In short, Defendants contend that the agreements contain choice-of-law provisions that provide that the agreements or guarantees shall be governed by and construed in accordance with New York law and these provisions are broadened by provisions establishing New York as the exclusive forum for all claims "relating to" or "arising out of" the agreements. Thus, according to Defendants, New York law applies to all of Plaintiffs' claims. Plaintiffs argue the choice-of-law clause must be read narrowly and that their claims in this matter do not fall within its scope.

**A. Is the Choice-of-law Clause Enforceable?**

3

Before assessing the scope of the choice-of-law provision, the Court is arguably presented with a question of its enforceability.  Plaintiffs have asserted a claim for declaratory judgment that these choice-of-law provisions are unenforceable as against public policy because "California has a strong public policy against usury and a greater interest than New York in having its law applied."  (Compl. ¶ 30).  Defendants have moved to dismiss the declaratory judgment claim.

Despite bringing this declaratory judgment claim, in their briefing Plaintiffs have argued only that the choice-of-law provision at issue is narrow and that, because it does not cover the claims at issue here, California law should apply.  Plaintiffs have not defended their declaratory judgment claim against the Defendants' motion to dismiss by arguing in their briefing that the choice-of-law provision is unconscionable or unenforceable.  (Opp. at 2-3). By failing to brief these arguments, Plaintiffs may have waived them. *See United States v. Ramos*, 677 F.3d 124, 129 n.4 (2d Cir. 2012) (even when made at oral argument, an argument not made in a party's briefs on appeal was waived); *Villanueva v. City of New York*, No. 08-cv-8793, 2010 U.S. Dist. LEXIS 38703, at *2 n.2 (S.D.N.Y. Apr. 14, 2010) (deeming unbriefed claims waived).  Indeed, Plaintiffs' have wholly failed to respond to that portion of Defendants' motion arguing that Plaintiffs' declaratory judgment claim should be dismissed.  Nevertheless, because Plaintiffs have asserted  this claim and Defendants have moved to dismiss that claim, the Court will—in the alternative—assess this claim on the merits notwithstanding the lack of briefing by Plaintiffs. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010).

As to Plaintiffs' claim that the choice-of-law provision is unenforceable as contrary to public policy, Plaintiffs' allegations are all directed toward claimed violations of California public policy.  However, as the Second Circuit has explained, the question of whether a choice-

4

of-law clause is contrary to public policy is considered with regard to the forum state, in this case

New York. *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (holding

that the presumption of validity of such a clause may be overcome by a "clear showing" that the

clause is unreasonable, including that it "contravene[s] a strong public policy *of the forum state*"

(emphasis added)); *Barkanic v. General Admin. of Civil Aviation of People's Republic of China*,

923 F.2d 957, 964 n.7 (2d Cir. 1991) ("[W]e do not believe that New York courts would

consider the public policies of jurisdictions other than New York in choice of law decisions.");

*Tropp v. Corp. of Lloyd's*, No. 07-cv-414, 2008 U.S. Dist. LEXIS 30635, at *37-38 (S.D.N.Y.

Mar. 25, 2008). Having only alleged violations of California public policy, it does not appear

that Plaintiffs have adequately pleaded their claim. Moreover, Plaintiffs' argument on this point

is that "California has a strong public policy against usury." (Compl. ¶ 30). However, as

described below, the New York legislature and courts have determined that corporations and

limited liability companies may not bring usury claims. As such, to the extent that the New York

law governing usury claims is narrower than that of California in this respect, this appears to

have been a deliberate policy choice made by New York—the forum state.

It is possible, though not entirely clear, that Plaintiffs intended in their Complaint to

assert that the choice-of-law provision is unconscionable. (*Compare* Compl. ¶ 29 *with* Compl. ¶

30). The Court will assume for present purposes that Plaintiffs intended to make such a claim as

to this provision. A finding of unconscionability generally requires a showing that a contract is

both procedurally and substantively unconscionable. *See Ragone v. Atlantic Video*, 595 F.3d

115, 121-22 (2d Cir. 2010); *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 485-87

(Cal. App. 4th Dist. 1982). As noted by the Second Circuit, under New York law a contract is

unconscionable when it is so "grossly unreasonable or unconscionable in light of the mores and

5

business practices of the time and place as to be unenforceable." *Ragone*, 595 F.3d at 121.

Procedural unconscionability requires a showing that there was not a "meaningful choice";

substantive unconscionability looks to the content of the contract and whether it is unreasonably

favorable to the party against whom unconscionability is asserted. *Id.* at 121-22; *Gillman v.*

*Chase Manhattan Bank*, 73 N.Y.2d 1, 12 (N.Y. 1988); *see also A & M Produce Co.*, 135 Cal.

App. 3d at 485-87.

Plaintiffs have not adequately alleged that the choice-of-law provision was procedurally

or substantively unconscionable, or otherwise "grossly unreasonable." Plaintiffs' allegations of

procedural unconscionability as to the formation of the agreements are only that there was a

disparity in bargaining power and that the agreements were presented on a "take-it-or-leave-it"

basis. *See Ragone*, 595 F.3d at 122 (explaining that the mere fact that a contract is presented on

a "take-it-or-leave-it" basis does not suffice to render a contract procedurally unconscionable).

Moreover, as to substantive unconscionability, Plaintiffs have not alleged or established that the

New York choice-of-law provision was, as a general matter, unreasonably favorable to

Defendants. Although, as discussed below, application of New York law defeats Plaintiffs'

usury claims, this alone cannot suffice to show substantive unconscionability—adopting such a

rule would make every choice-of-law provision that could affect the disposition of a case

substantively unconscionable. *See A & M Produce Co.*, 135 Cal. App. 3d at 485-87 (explaining

that even unbargained-for terms of contracts will only be denied enforcement where they are

substantively unreasonable in additional to being procedurally unconscionable).

## B.  Scope of the Choice-of-Law/Forum Selection Provisions

Having determined that the choice of law clause is enforceable, the Court must now

determine the extent to which it covers Plaintiffs' claims in this matter.  Defendants argue that

the choice-of-law provision is broad enough to cover all of Plaintiffs' claims, including their tort claims; Plaintiffs disagree, contending that the clause should be narrowly construed and covers none of the claims they assert. Under New York choice-of-law rules, "[i]n order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996).

In particular, the Court of Appeals decision in *Finance One Public Co. v. Lehman Brothers Special Financing, Inc.*, 414 F.3d 325, 335 (2d Cir. 2005), considered a materially identical choice-of-law clause that specified that that the "Agreement will be governed by and construed in accordance" with New York law, and also had a forum -selection provision. *Id.* Noting the reluctance of New York courts to construe contractual choice-of-law clauses broadly, as expressed by "the leading New York case on the scope of choice-of-law clauses," *Knieriemen v. Bache Halsey Stuart Shields, Inc.*, 74 A.D.2d 290 (N.Y. App. Div. 1st Dep't 1980), the Court of Appeals explained that "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs the construction of the terms of the contract, even when the contract also includes a broader forum-selection clause." *Fin. One Pub. Co.*, 414 F.3d at 335. In particular, the Court of Appeals held that the setoff claim at issue in that case was not subject to the choice-of-law provision, given the language of the provision and the fact that the setoff right did not arise from the contract. *See id.* at 335-36. Other courts have reached similar conclusions. *See Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 203 (N.D.N.Y 2011); *Latin Am. Fin. Group, Inc. v. Pareja*, No. 04-cv-10082, 2006 U.S. Dist. LEXIS 48964, at *19-20 (S.D.N.Y. July 19, 2006); *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03-cv-3120, 2005 U.S. Dist. LEXIS 16382, at *50-51 (S.D.N.Y. Aug. 8, 2005).

7

Defendants argue that this Court should disregard *Finance One* and rely on *Turtur v. Rothschild Registry Int'l*, 26 F.3d 304, 309-10 (2d Cir. 1994), which, on materially identical facts, found that a fraud claim fell within the scope of such a choice-of-law provision as broadened by a forum selection clause. However, in *Finance One*, the Second Circuit expressly rejected *Turtur* as controlling authority because *Turtur* did not apply New York choice-of-law rules. *Fin. One Pub. Co.*, 414 F.3d at 333-34. Subsequent decisions have similarly eschewed reliance on *Turtur* as relevant to the New York choice-of-law analysis or otherwise held that the presence of a broad forum selection clause does not expand a narrower choice-of-law clause. *See Ayco*, 795 F. Supp. 2d at 203; *FTI Consulting, Inc. v. Graves*, No. 05-cv-6719, 2007 U.S. Dist. LEXIS 55325, at *38 n.12 (S.D.N.Y. July 30, 2007); *Sedona Corp.*, No. 03-cv-3120, 2005 U.S. Dist. LEXIS 16382, at *50-51. Moreover, those cases on which Defendants rely to argue that the forum selection clause should be read to broaden the choice-of-law provision all predate *Finance One* and, in fact, rely on *Turtur* for this proposition. *See Nanopierce Techs. v. Southridge Cap. Mgmt.*, No. 02-cv-767, 2002 WL 31819207, at *10 (S.D.N.Y Oct. 10, 2002); *About.com, Inc. v. Targetfirst, Inc.*, No. 01-cv-1665, 2002 U.S. Dist. LEXIS 7770, at *6 (S.D.N.Y. Apr. 26, 2002); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 526 (S.D.N.Y. 2001) (noting also that the parties had agreed on the applicability of the choice-of-law provision); *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 223 F. Supp. 2d 474, 489 (S.D.N.Y. 2002).

Defendants thus cannot prevail by arguing that the choice-of-law clause in the agreements clearly sweeps broadly enough to encompass all causes of action that may in some ancillary way relate to the agreements. This does not, however, end the Court's inquiry. In particular, there remains a question of whether the choice-of-law clause is broad enough to

encompass *any* of Plaintiffs' claims, particularly their claim for usury. For the reasons explained below, the Court finds that it is and that New York law governs at least Plaintiffs' usury claim.

The parties' arguments on whether Plaintiffs' usury claim is controlled by the choice-of-law provision even when that provision is narrowly construed are brief and overshadowed by their arguments on whether the forum selection clause broadens the choice-of-law clause to encompass tort claims. Defendants contend, however, that "construction of the Agreements is fundamental to Plaintiffs' usury and declaratory judgment claims" and that usury is by definition the "corrupt agreement" to charge unlawful interest, suggesting the Court should conclude New York law governs these claims. (Mot. at 12). Plaintiffs respond that usury is a tort, citing a Supreme Court case considering federal law and two unpublished California district court cases. (Opp. at 6). However, for the reasons explained below, these cases are not persuasive and the Court has not located authority applying New York law that suggests Plaintiffs' usury claims would not fall within the choice-of-law provision.

To the contrary, New York law suggests that the choice-of-law provision in the agreements is broad enough to cover Plaintiffs' usury claims. Beginning with the text of the agreements, they provide that they are to be "governed by and construed in accordance with" New York law. Plaintiffs' claim of usury goes to the lawfulness of the agreements themselves, N.Y. Gen. Oblig. Law § 5-511, particularly their terms as to the rate of interest charged, *see id.* § 5-501, and apply essentially to the contractual relationship between the parties. Plaintiffs' claims of usury, although created by statute, are dependent on the agreements themselves, and would thus appear to be covered by a choice-of-law provision that provides that the agreements are governed by New York law.

Consideration of the Second Circuit's decision in *Finance One* underscores why it is

9

appropriate to view usury claims as falling within the scope of the choice-of-law provision in the agreements. *Finance One* held that the "most important[]" consideration for the Second Circuit's assessment of whether plaintiff's claims were covered by the choice-of-law provision was that the "claimed setoff right does not arise from the contract, so there is no reason that a choice-of-law clause specifying that New York law governs 'this Agreement' should also reach LBSF's setoff claim." *Fin. One Pub. Co*, 414 F.3d at 335. The Court of Appeals explained that setoff claims by definition arise from different transactions than those governed by the relevant agreements and any relationship to those agreements was "purely incidental." *Id.* at 335-36. In contrast, the viability of Plaintiffs' usury claim is predicated on the existence, terms, and construction of the agreements, and itself goes to the lawfulness and enforceability of the agreements. As such, it would appear to fall within a choice-of-law provision specifying that the agreements are "governed by" New York law. *Cf. id.* (explaining that "if LBSF's setoff right were created by the Master Agreement and Schedule, New York law would govern that right because the choice-of-law clause would reach it").

In addition, New York courts applying a choice-of-law analysis to usury claims in the absence of a choice-of-law agreement have indicated that usury claims are subject to the choice-of-law rules governing contract claims rather than tort claims. Specifically, New York courts have applied the "center of gravity" test in determining which State's substantive law governs usury claims. *See Am. Equities Group, Inc. v. Ahava Dairy Prods. Corp.*, No. 01-cv-5207, 2004 U.S. Dist. LEXIS 6970, at *23-24 (S.D.N.Y. Apr. 23, 2004); *Culbert v. Rols Capital Co.*, 585 N.Y.S.2d 67, 67 (N.Y. App. Div. 2d Dep't 1992); *A. Conner General Contracting, Inc. v. Rols Capital Co.*, 535 N.Y.S.2d 420, 421 (N.Y. App. Div. 2d Dep't 1988); *American Express Travel Related Servs. Co., Inc. v Assih*, 893 N.Y.S.2d 438, 446 (N.Y. Civ. Ct. 2009); *Industrial Dev.*

*Bank, Ltd. v. Bier*, 565 N.Y.S.2d 980, 984 (N.Y. Sup. Ct. 1991); *cf. also Tuthill Finance v. Cartaya*, 519 N.Y.S.2d 243 (N.Y. App. Div. 2d Dep't 1987) (applying contractual choice-of-law principles to usury claim).  The "center of gravity" test is applied in contract cases, in contrast to the "interest analysis" applied to tort claims.  *Fin. One Pub. Co.*, 414 F.3d at 336; *see also Allstate Ins. Co. v. Stolarz*, 597 N.Y.S.2d 904, 906-07 (N.Y. 1993).

New York law also generally treats usury as contractual in nature.  For example, New York courts have treated and referred to usury as a contractual defense.  *See, e.g., AJW Partners LLC v Itronics Inc.*, 892 N.Y.S.2d 46, 48 (N.Y. App. Div. 1st Dep't 2009); *Anamdi v. Anugo*, 644 N.Y.S.2d 804, 804 (N.Y. App. Div. 2d Dep't 1996); *Tides Edge Corp. v. Central Federal Sav., F.S.B.*, 542 N.Y.S.2d 763, 765 (N.Y. App. Div. 2d Dep't 1989) (usurious contracts are void when asserted against individuals).  To the extent that other contractual defenses—for example, unconscionability—would be covered by such a choice-of-law clause, *see, e.g., Ragone*, 595 F.3d at 121; *Dumanis v. Citibank (South Dakota), N.A.*, No. 07-cv-6070, 2007 U.S. Dist. LEXIS 81586, at *5-6 (W.D.N.Y. Oct. 31, 2007), one would expect usury to be treated similarly.[1] Similarly, usury is codified in New York law under Article 5 of the General Obligations Law, which governs the "creation, definition and enforcement of contractual obligations."  *See* N.Y. Gen. Oblig. Law § 5-501, *et seq.*

Finally, the single New York case that the Court has located that considered the question of whether a choice-of-law provision covered a usury claim suggests that the choice-of-law

---

[1] Although the instant case involves an affirmative claim of usury rather than its assertion as a contractual defense, this does not change the Court's analysis.  In particular, treating an affirmative usury claim differently from an assertion of usury as a contractual defense in assessing whether it is covered by a choice-of-law clause would lead to incongruous results.  For example, in the present case such an approach could lead to a view that the contracts are non-usurious under New York law for purposes of their enforceability, but usurious—and therefore unlawful—under California law for purposes of damages.  Moreover, New York courts have extended principles expressly applicable to usury as a contractual defense to affirmative usury claims.  *See Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S.2d 802, 804 (N.Y. App. Div. 1st Dep't 1991).

clause at issue here is broad enough to cover a usury claim. In that case, the relevant agreement provided that it was "governed by Utah law and applicable federal law." *Assih*, 893 N.Y.S.2d at 444. The court in that case noted that, under New York choice-of-law rules, this provision would apply to the parties' usury arguments, subject to certain exceptions. *See id.* at 445. Although the court there found that these exceptions were met—particularly that New York had a strong policy against excessive interest rates and that New York had the most significant contacts with the transaction—this case corroborates the Court's conclusion that the choice-of-law clause at issue here is broad enough to govern Plaintiffs' usury claim. *See id.*

Plaintiff relies on two unpublished California district court cases to argue to the contrary, neither of which addressed the points discussed above and neither of which is binding on this Court or particularly persuasive. In the first, *Clark v. Advanceme, Inc.*, No. 08-cv-3540 (VBF) (C.D. Cal. filed Jan. 20, 2009), the court's analysis of the choice-of-law issue as applied to the usury claim was confined to a single sentence that cited no authoritative New York law. The second case, *Essex Partners Ltd. v. Merchant Cash and Capital*, No. 11-cv-3366 (CAS) (C.D. Cal. Aug. 1, 2011), relied on *Clark* for the proposition that usury is a tort, and thus shares its flaws. Moreover, as described above, the more persuasive approach is to view Plaintiffs' usury claims as subject to the choice-of-law provision in the agreements. Finally, Plaintiffs' cite the Supreme Court's decision in *McCollum v. Hamilton Nat'l Bank*, 303 U.S. 245, 247 (1938). This case is inapposite for several reasons, including that it was not concerned with choice-of-law or the scope of a choice-of-law provision, and was addressing how usury claims are viewed under federal law rather than New York law. *See id.*

In sum, the Court concludes that, as to Plaintiffs' usury claim, New York law applies under the choice-of-law provision. For the reasons explained below, the Court need not resolve

whether New York or California law applies to Plaintiffs' remaining claims.

## IV.  MOTION TO DISMISS

Having settled the choice-of-law question, Plaintiffs' claims are easily disposed of.

Plaintiffs concede that under New York law "corporations and limited liability companies cannot

state a claim for usury," make no argument that their usury claim survives application of New

York law, and thus effectively concede that this claim must be dismissed.  (Opp. at 4, 12-17); *see*

N.Y. Gen. Oblig. Law § 5-521; N.Y. LLC Law § 1104; *Scantek Med., Inc. v. Sabella*, 582 F.

Supp. 2d 472, 474 (S.D.N.Y. 2008); *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S.2d

802, 803-04 (N.Y. App. Div. 1st Dep't 1991); *Simoni v. Time-Line, Ltd.*, 708 N.Y.S.2d 142, 143

(N.Y. App. Div. 2d Dep't 2000) (explaining that usury is also not available to an individual

guarantor of the corporate obligation).

As to Plaintiffs' claim for money had and received, Defendants note that under both New

York and California law, such claims are barred by the existence of the agreements.  *See Phoenix*

*Garden Restaurant v. Chu*, 245 A.D.2d 164, 166 (N.Y. App. Div. 1st Dep't 1997); *Shvarts v.*

*Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1159 (Cal. App. 2d Dist. 2000).  Plaintiffs' only

rejoinder to this argument is that under California law they are entitled to bring a claim for

money had and received because they have been charged usurious interest.  (Opp. at 19).  *See*

*Stock v. Meek*, 35 Cal. 2d 809, 816 (Cal. 1950).  However, as the Court has just explained,

Plaintiffs have not stated a valid usury claim; thus, their claim for money had and received also

fails.  *Cf. Essex Partners Ltd. v. Merchant Cash and Capital*, No. 11-cv-3366 (CAS) (C.D. Cal.

Aug. 1, 2011) (explaining that because the plaintiffs have "stated a *valid* usury claim. . . . they

may bring an action for money had and received to recover usurious interest" (emphasis added));

*Creative Ventures, LLC v. Jim Ward & Associates*, 195 Cal. App. 4th 1430, 1441 (Cal. App. 6th

Dist. 2011) (explaining that money had and received claim is a common law remedy for usury);

*Fenton v. Markwell & Co.*, 11 Cal. App. 2d Supp. 755, 764-65 (Cal. App. Dep't Super. Ct. 1935).

Defendants also argue that Plaintiffs have failed to allege an unlawful, unfair, or

fraudulent business practice or act as required to state a claim under California Business and

Professions Code § 17200. *See Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1043-

44 (9th Cir. 2010). Plaintiffs argue that they intended to assert this claim under only the

"unlawful" prong of the statute, and that "the unlawful predicate act underlying [P]laintiffs'

[unfair competition] claim is [D]efendants' making illegal loans in violation of California's

usury law." (Opp. at 20 & n.6). As such, in the absence of a viable cause of action for usury,

Plaintiffs cannot maintain their claim for unfair competition under California law. *See, e.g.*,

*Seirus Innovative Accessories, Inc. v. Cabela's Inc.*, No. 09-cv-102H, 2011 U.S. Dist. LEXIS

145307, at *14 (S.D. Cal. Oct. 19, 2011).

Finally, Plaintiffs' Complaint alleges that a number of provisions—in addition to the

choice-of-law provision discussed above—are unconscionable and requests declaratory judgment

on these claims. As noted above, Plaintiffs may have waived their arguments that these claims

should not be dismissed. *See supra* Section III.A. Regardless, the common allegation for

procedural unconscionability of these provisions is that the contracts were presented on a "take-

it-or-leave it" basis and that Defendants have superior bargaining power. (Compl. ¶¶ 31-34). As

already explained, such allegations are not sufficient to demonstrate procedural

unconscionability under New York law.[2] *See Ragone*, 595 F.3d at 121-22; *see also Nayal v. HIP*

---

[2] Having found the choice of law provision valid and Plaintiffs having made no argument that the choice of law clause is invalid or that New York law does not apply to this claim, the Court applies New York law in assessing whether these provisions are unconscionable. *See Ragone*, 595 F.3d at 121; *Dumanis*, No. 07-cv-6070, 2007 U.S. Dist. LEXIS 81586, at *5-6; *see also Karnauskas v. Columbia Sussex Corp.*, No. 09-cv-7104, 2012 U.S. Dist. LEXIS 8988, at *6 (S.D.N.Y. Jan. 24, 2012) (applying Arizona law because parties did not dispute choice of law and both applied Arizona law in their briefs); *Mason Tenders Dist. Council of Greater N.Y. v. Concore Equip., Inc.*,

*Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (collecting cases).

Plaintiffs request leave to replead in the event that the Court finds, as it has, that their Complaint is deficient. However, the Court's individual rules provided Plaintiffs with an opportunity to amend their complaint in light of the motion to dismiss, which was filed on May 7, 2012, after the case was transferred to this Court and provide that if Plaintiff elects not to amend, no further opportunities to amend will be granted. *See* Individual Rules in Civil Cases at 4. Plaintiffs did not seek to amend their Complaint and, instead, chose to respond to the motion to dismiss. Moreover, given that Plaintiffs have conceded that their usury claim fails under New York law and have hinged their unfair competition and money-had-and-received claims on the validity of that usury claim, allowing Plaintiffs' to amend would be futile. *See Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 127 (2d Cir. 2007) (denying leave to replead where there had been no showing that granting such leave would cure the deficiencies in the complaint). Under these circumstances, Plaintiffs' request for leave to replead is denied.

The Motion to Dismiss is GRANTED. The Clerk of the Court is directed to close this case.

SO ORDERED:

Dated: September 17, 2012
        New York, New York

_____
ALISON J. NATHAN
United States District Judge

No. 10-cv-4227, 2011 U.S. Dist. LEXIS 132200, at *27 n.2 (S.D.N.Y. Nov. 10, 2011).

15